# In the United States Court of Appeals for the Fifth Circuit

NORCAVE PROPERTIES, LLC,

*Plaintiff-Appellant,*

v.

INTERNAL REVENUE SERVICE,

*Defendant-Appellee.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION, NO. 2:25-CV-00398

———————————————

## REPLY BRIEF OF PLAINTIFF-APPELLANT

———————————————

Meeren Amin
Fox Rothschild LLP
2020 K Street NW
Suite 500
Washington, DC 20011
(202) 794-1271

Kip D. Nelson
Fox Rothschild LLP
230 N. Elm Street
Suite 1200
Greensboro, NC 27401
(336) 378-5200

*Counsel for Appellant*

# CERTIFICATE OF INTERESTED PERSONS

No. 25-30542, Norcave Properties, LLC v. Internal Revenue Service

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiff-Appellant**
Norcave Properties, LLC

**Counsel for Plaintiff-Appellant**
Meeren Amin
Kip D. Nelson
Fox Rothschild LLP

**Defendant-Appellee**
Internal Revenue Service

**Counsel for Defendant-Appellee**
Brett A. Shumate, Assistant Attorney General
Joshua Wu, Deputy Assistant Attorney General
Jennifer M. Rubin
Douglas C. Rennie
Tax Litigation Branch, Civil Division, U.S. Department of Justice

/s/ Kip D. Nelson
Kip D. Nelson

*Attorney of record for Appellant*

**TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ..........................................i

TABLE OF CONTENTS ......................................................... ii

TABLE OF AUTHORITIES................................................. iii

REPLY ARGUMENT ......................................................1

    I.     The IRS misconstrues the Anti-Injunction Act ......................1

    II.    The Seventh Amendment applies because fraud and misstatements are common-law issues that have traditionally been tried to a jury ............................................8

    III.   The IRS has not met its burden of demonstrating that the penalties fall within the public rights exception............18

CONCLUSION .................................................................24

CERTIFICATE OF SERVICE.................................................26

CERTIFICATE OF COMPLIANCE......................................27

# TABLE OF AUTHORITIES

<strong>Page(s)</strong>

**Cases:**

*AT&T, Inc. v. FCC,*
149 F.4th 491 (5th Cir. 2025) .................................................... 8, 9, 10

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n,*
430 U.S. 442 (1977) .................................................................... 9

*Bartlett v. Kane,*
57 U.S. 263 (1853) ..................................................................... 20

*Blackburn v. Comm'r,*
681 F.2d 461 (6th Cir. 1982) ..................................................... 10

*Cheatham v. United States,*
92 U.S. 85 (1875) ....................................................................... 20

*CIC Servs., LLC v. IRS,*
593 U.S. 209 (2021) .................................................................... 4

*Confederated Tribes & Bands of the Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau,*
843 F.3d 810 (9th Cir. 2016) ..................................................... 5

*Curtis v. Loether,*
415 U.S. 189 (1974) .................................................................... 20

*Franklin v. United States,*
49 F.4th 429 (5th Cir. 2022) ..................................................... 5

*Funk v. Comm'r,*
687 F.2d 264 (8th Cir. 1982) ..................................................... 10

*HDH Grp., Inc. v. United States,*
No. 2:24-cv-988, 2025 WL 2711877 (W.D. Pa. Sept. 23, 2025) ...................................................................................... 10, 11

*Helvering v. Mitchell,*
  303 U.S. 391 (1938)..................................................................22

*Herman & MacLean v. Huddleston,*
  459 U.S. 375 (1983)..................................................................14

*Loftin & Woodard, Inc. v. United States,*
  577 F.2d 1206 (5th Cir. 1978).......................................... 12, 13

*Marbury v. Madison,*
  5 U.S. 137 (1803)................................................................ 6, 8

*Mathes v. Comm'r,*
  576 F.2d 70 (5th Cir. 1978)......................................................10

*McCabe v. Alexander,*
  526 F.2d 963 (5th Cir. 1976)......................................................5

*Mitchell v. Comm'r,*
  118 F.2d 308 (5th Cir. 1941)............................................ 13, 22, 23

*Nat'l Taxpayers Union v. United States,*
  68 F.3d 1428 (D.C. Cir. 1995) ...................................................5

*NLRB v. Starbucks Corp.,*
  159 F.4th 455 (6th Cir. 2025) ..................................................18

*Olinger v. Comm'r,*
  234 F.2d 823 (5th Cir. 1956).....................................................12

*Origet v. Hedden,*
  155 U.S. 228 (1894)...............................................................20

*Ortega v. Off. of the Comptroller of the Currency,*
  155 F.4th 394 (5th Cir. 2025) ..................................................19

*Parks v. Comm'r,*
  94 T.C. 654 (1980)................................................................13

*SEC v. Jarkesy,*
  603 U.S. 109 (2024)........................................................ *passim*

*Silver Moss Props., LLC v. Comm'r*,
165 T.C. No. 3 (2025) ...........................................................4

*Stern v. Marshall*,
564 U.S. 462 (2011) ...........................................................21

*Thomas v. Humboldt Cnty.*,
146 S. Ct. 27 (2025) ...........................................................21

*Tull v. United States*,
481 U.S. 412 (1987) .................................................... 15, 16

*United States v. Childs*,
266 U.S. 304 (1924) ...........................................................16

*United States v. McMahan*,
569 F.2d 889 (5th Cir. 1978) ...............................................1

*Vaping Dragon LLC v. U.S. FDA*,
No. 1:25-CV-081, 2026 WL 266277 (N.D. Tex. Feb. 2,
2026) .................................................................... 3, 12, 14

*Z Street v. Koskinen*,
791 F.3d 24 (D.C. Cir. 2015) .................................................7

**Constitutional Provisions:**

U.S. Const. amend. VI .........................................................1

U.S. Const. amend. VII ............................................. *passim*

**Statutes:**

18 U.S.C. § 3553 ...............................................................17

26 U.S.C. § 6601 ...............................................................16

26 U.S.C. § 6662 ...............................................................15

26 U.S.C. § 6663 .......................................................... 11, 14

28 U.S.C. § 2402 .................................................................4

Act of Aug. 4, 1790, ch. 35, 1 Stat. 145 .................................................. 19

Act of July 31, 1789, ch. 5, 1 Stat. 29 ..................................................... 19

Act of June 5, 1794, ch. 45 1 Stat. 373 .................................................... 19

An Act to Establish the Judicial Courts of the United States,
 ch. 20, 1 Stat. 73 (1789) .................................................................. 20

**Other Authorities:**

I.R.M. 20.1.1.2.1(8) Encouraging Voluntary Compliance
 (Nov. 25, 2011) ................................................................................ 17

Matthew P. Harrington, *The Economic Origins of the
 Seventh Amendment*, 87 Iowa L. Rev. 145 (2001) ........................... 21

Roger W. Kirst, *Administrative Penalties and the Civil Jury:
 The Supreme Court's Assault on the Seventh Amendment*,
 126 U. Penn. L. Rev. 1281 (1978) ............................................. 19, 20

If this were a criminal case in which the government asserted fraud, or misstatements, there would be a right to a jury trial. U.S. Const. amend. VI. If this were an internal agency proceeding in which the government asserted fraud, or misstatements, there would be a right to a jury trial. *SEC v. Jarkesy*, 603 U.S. 109, 140 (2024). If this were a collection proceeding in which the government asserted fraud, or misstatements, there would be a right to a jury trial. *United States v. McMahan*, 569 F.2d 889, 892 (5th Cir. 1978) (en banc). But for some reason, the IRS believes that a notice of final partnership adjustments should be treated differently and that therefore the IRS should not have to present its fraud theory about Norcave to a jury. There is no constitutional or statutory basis for this anomalous position.

## REPLY ARGUMENT

## I.     The IRS misconstrues the Anti-Injunction Act.

The parties actually agree on a great deal. For example, both parties agree that when considering the Anti-Injunction Act ("AIA"), this Court should "focus on the action's objective aim." (Appellee's Br. at 18 (internal quotation omitted)). What is unclear is why the IRS believes it can change the stated, objective aim of the action brought by Norcave.

Despite the IRS's protestations, this action is about Norcave's right to a jury trial—nothing more and nothing less.

For example, the IRS states: "Norcave's complaint explicitly asked the District Court to '[d]eclare that the IRS cannot assert' penalties against it and '[e]njoin the IRS from pursuing any penalties' against it." (*Id.* at 13-14; *see also id.* at 19 (providing partial quotations from sentences in Norcave's complaint); *id.* at 25 (similar)). Noticeably missing from these selective quotations is that Norcave only asked for that relief *as it relates to the right to a jury trial.* (*See, e.g.*, ROA.6 ¶ 3; ROA.8 ¶ 26; ROA.9 ¶ 34; ROA.10-11). In other words, Norcave was not challenging the IRS's authority to do anything *other than* assert penalties without a jury trial. It is simply not true that the "relief [Norcave] seeks in its complaint" is "barring the IRS from 'assert[ing]' or 'pursu[ing]' fraud or other penalties against Norcave." (*See* Appellee's Br. at 21). Norcave simply asks for the right to present its defenses to those penalties to a jury of its peers.

In a similar vein, the IRS characterizes Norcave's argument as one proposing "that the Government is constitutionally prohibited from *determining* what those taxes and penalties are in the first place." (*Id.*

at 42).  Not so.  The IRS has an internal process in which it audits tax returns and determines which cases to assert penalties.  Taxpayers (along with courts and juries) are not involved in that process at all.  But that is a far different issue from how a taxpayer is allowed to defend against civil or criminal penalties that the IRS *has* decided to pursue. Without a jury trial, the taxpayer is unable to refute allegations of fraud and misstatements before the body that the Constitution entrusts with resolving such disputes.  This is not an action to restrain the collection of taxes but rather an action to enforce a bedrock constitutional right.  After all, as one judge recently noted, "[w]hile the Seventh Amendment has procedural undertones, it is structural in nature."  *Vaping Dragon LLC v. U.S. FDA*, No. 1:25-CV-081, 2026 WL 266277, at \*9 (N.D. Tex. Feb. 2, 2026).

The IRS also provides a lengthy explication of tax refunds and partnership audits.  (Appellee's Br. at 2-8).  The IRS notes the general principle that taxes can be challenged "only after they are paid."  (*Id.* at 18 (internal quotation omitted)).  But these assertions are perplexing because they have no bearing on the matter at hand.  It is undisputed that regardless of the forum, the IRS will not provide Norcave with a

3

right to defend against the penalties before a jury.  (ROA.8 ¶ 19; ROA.62 ¶ 19 (admitting that "whether Norcave challenges the IRS's attempted imposition of penalties in Tax Court, the Court of Federal Claims, or a United States District Court, it will not have the opportunity for a jury trial")); *see also Silver Moss Props., LLC v. Comm'r*, 165 T.C. No. 3, at *3 n.8 (2025) (explaining that "the BBA audit and litigation regime similarly does not provide a right to trial by jury in partnership-level proceedings") (citing 28 U.S.C. § 2402).  *That* is the issue here.  The IRS's suggestion that Norcave could have made different elections or chosen to be formed as a different type of entity is irrelevant for the same reason.

Nevertheless, the IRS falls back on its position that the AIA (and the corresponding provision in the Declaratory Judgment Act) should prohibit Norcave from asserting its constitutional right.  This position contravenes both the language and the intent of the statutes.

First, and most importantly, the IRS does not address the crucial language from the Supreme Court's most recent discussion of the topic: that the AIA is "keyed to the acts of assessment [and] collection themselves." *CIC Servs., LLC v. IRS*, 593 U.S. 209, 217 (2021). The IRS makes no argument that Norcave's suit is about the actual acts of

assessment or collection.  Nor could it.  The question in this case is not whether the IRS can assess or collect, but rather who gets to decide whether Norcave committed fraud or made misstatements.

The cases cited by the IRS confirm that the text of the AIA only targets actions that challenge the imposition of taxes themselves.  *See Confederated Tribes & Bands of the Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*, 843 F.3d 810 (9th Cir. 2016) (plaintiff alleging a blanket exemption from the excise tax); *Nat'l Taxpayers Union v. United States*, 68 F.3d 1428 (D.C. Cir. 1995) (plaintiff seeking an injunction against enforcement of the estate and gift taxes); *see also Franklin v. United States*, 49 F.4th 429, 434 (5th Cir. 2022) (applying the AIA when each of the plaintiff's claims "impliedly challenge[d] the validity of the tax assessment itself"); *McCabe v. Alexander*, 526 F.2d 963, 964 (5th Cir. 1976) (per curiam) (applying the AIA when the plaintiff sought to "enjoin[] the collection of taxes" and "a declaration that no taxes are due for the years in question").  That is not the situation here.

Second, the IRS's argument is inconsistent with the purpose of the statutory prohibitions.  The IRS even acknowledges that the tax exception to the Declaratory Judgment Act is aimed at "constru[ing] . . .

5

tax code provisions and treasury regulations." (Appellee's Br. at 19). Norcave agrees. The problem with the IRS's argument is that Norcave's suit does not require construing *any* tax code provisions or regulations. It only requires interpreting the Seventh Amendment to the United States Constitution—which is, of course, the core of an Article III court's responsibility. *Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

Further, the IRS's argument has real-world implications. The IRS dismisses out of hand the very plausible scenarios presented in Norcave's opening brief that would result if the AIA were broadly interpreted to preclude suits raising constitutional issues. (*Compare* Opening Br. of Pl.-Appellant at 15, *with* Appellee's Br. at 30). The IRS's position seems to be that if a taxpayer can raise a different argument in a different forum, then the AIA prevents a constitutional argument from being raised in an Article III court. Fortunately, Article III is not so feeble.

Courts have also refused to interpret the statute broadly when doing so would preclude taxpayers from obtaining the very relief that they seek. In addition to the several cases cited in Norcave's opening

6

brief, the IRS cites another case to support this point. In *Z Street v. Koskinen*, a nonprofit organization alleged that an IRS policy violated the First Amendment. 791 F.3d 24 (D.C. Cir. 2015). There, as here, the IRS argued that the claim was barred by the AIA. But the appellate court rejected that argument and instead affirmed the district court's determination that the action sought "only to have a constitutionally valid process used," "nothing more and nothing less." *Id.* at 28 (internal quotation omitted). The D.C. Circuit reiterated that the AIA "does not apply at all where the plaintiff has no other remedy for its alleged injury." *Id.* at 31. That includes when the taxpayer has no alternative judicial path to meaningfully challenge an IRS action. *Id.* at 31-32 (holding that the taxpayer's ability to wait 270 days and then file suit was an insufficient remedy because the IRS would be free for at least 270 days to continue the unconstitutional action that the taxpayer sought to bar).

Norcave is in the same position as the plaintiff in *Z Street*. The only way to vindicate its constitutional right to a jury trial is through this action. If the AIA were broadened to cover the litigation here, then Norcave (and other litigants seeking to enforce constitutional rights) would be left with an injury for which there is no remedy. That is

7

antithetical to our system of government.  *Marbury*, 5 U.S. at 163 ("The government of the United States has been emphatically termed a government of laws, and not of men.  It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.").

Neither the AIA nor the Declaratory Judgment Act precludes Norcave from seeking the protection of the Seventh Amendment.  This suit is Norcave's only option to vindicate its constitutional right.  The district court erred in holding otherwise.

## II. The Seventh Amendment applies because fraud and misstatements are common-law issues that have traditionally been tried to a jury.

On the merits, the IRS does not explain how its position can be reconciled with either *Jarkesy* or *AT&T, Inc. v. FCC*, 149 F.4th 491 (5th Cir. 2025).[1]  Both this Court and the Supreme Court have explained that

---

[1] Although the Supreme Court granted certiorari on one aspect of the *AT&T* decision, the government explicitly did *not* seek review of this Court's holdings that the pursuit of a forfeiture penalty is a suit at common law or that such a suit falls outside the public rights exception to the Seventh Amendment. Petition for a Writ of Certiorari at 7, *FCC v. AT&T Inc.*, No. 25-406 (U.S. Oct. 2, 2025).  Thus, regardless of the outcome of the Supreme Court's decision, those aspects of this Court's opinion will remain.

administrative penalties involving fraud and similar claims cannot be assessed without a jury trial. That same principle applies here. If the IRS is correct, then both *Jarkesy* and *AT&T* were wrongly decided. Of course, it is not the IRS's prerogative to determine the scope of the Seventh Amendment.

Perplexingly, the IRS avoids these recent decisions and instead relies on the 1977 case of *Atlas Roofing Co. v. Occupational Safety & Health Review Commission*, 430 U.S. 442 (1977). Yet, the IRS neglects to mention the Supreme Court in *Jarkesy* explicitly prevented *Atlas Roofing* from superseding the Seventh Amendment: "The reasoning of *Atlas Roofing* cannot support any broader rule. The dissent chants '*Atlas Roofing*' like a mantra, but no matter how many times it repeats those words, it cannot give *Atlas Roofing* substance that it lacks." *Jarkesy*, 603 U.S. at 138. Indeed, the *only* claimed violation in *Atlas Roofing* was the violation of a statute—not fraud or misstatements like in this case. *See* 430 U.S. at 447 ("Petitioners were separately cited by the Secretary and ordered immediately to abate pertinent hazards after inspections of their respective worksites conducted in 1972 revealed conditions that

9

assertedly violated a mandatory occupational safety standard . . . .").
Whatever remaining effect *Atlas Roofing* has, it does not apply here.

Moreover, when courts have rejected Seventh Amendment arguments about certain tax issues, it was because there was an alternative basis to obtain a jury trial. *See HDH Grp., Inc. v. United States*, No. 2:24-cv-988, 2025 WL 2711877, at *12-13 (W.D. Pa. Sept. 23, 2025) (following *Jarkesy* to hold that the Seventh Amendment applies to penalties asserted by the IRS but ultimately holding that there was no violation because the taxpayer had a viable route to a jury); *see also Funk v. Comm'r*, 687 F.2d 264, 266 (8th Cir. 1982) (per curiam) ("If Taxpayers wished a jury trial, they could have paid the tax asserted to be due and filed a refund suit in the district court."); *Blackburn v. Comm'r*, 681 F.2d 461, 462 (6th Cir. 1982) (per curiam) (similar); *Mathes v. Comm'r*, 576 F.2d 70, 71 (5th Cir. 1978) (per curiam) (similar). But here, it is undisputed that Norcave will not be afforded a jury trial in any forum. Norcave could pay the tax, file a claim for refund, and then file suit in district court—but the parties agree that since Norcave is a BBA partnership, Norcave would still not be allowed a jury trial. Under *Jarkesy* and *AT&T*, that result is constitutionally infirm. This Court

should follow the binding precedent on the Seventh Amendment issue—and need go no further.

These are not just penalties in the abstract; they are penalties based on *fraud* and *misstatements* and are designed to *punish*. The IRS admits that the fraud penalty at issue here is only applicable "[i]f any part of an underpayment of tax required to be shown on a return is due to fraud." (Appellee's Br. at 8 (citing 26 U.S.C. § 6663(a))). Similarly, the IRS admits that the substantial understatement penalty only applies "to any portion of an underpayment attributable to negligence." (*Id.*). Fraud and misstatements and negligence are the very types of issues that have traditionally been tried to a jury. *See HDH Grp.*, 2025 WL 2711877, at *12 (explaining that under *Jarkesy*, "statutory claims with elements mirroring common-law fraud implicate the Seventh Amendment"); *see also id.* at *12 n.2 (noting that a penalty based in fraud is "a prototypical common law cause of action"). The IRS cannot unilaterally be the adjudicator of what constitutes fraud and misstatements. Litigants routinely bring civil actions for claims based in fraud and misstatements—they are the very essence of private rights. That is why the right to a jury trial is so important. After all, as the IRS concedes,

11

"[m]atters concerning private rights are those that a litigant has the right to have decided by an Article III court and, correspondingly, to which Seventh Amendment rights potentially attach." (Appellee's Br. at 32). "Any attempt to funnel that suit elsewhere—say, a juryless administrative tribunal—would run afoul of the Constitution." *Vaping Dragon*, 2026 WL 266277, at *9.

The IRS seeks to downplay the fraud and misstatement issues by baldly stating that "civil tax penalties ordinarily arise as a matter of law." (Appellee's Br. at 35). That is incorrect. The penalties at issue can only be assessed *if* there was fraud or a misstatement. To establish fraud, "the Government bears the burden of proving, by clear and convincing evidence, that the taxpayer intended to evade a tax he believed to be owing to the Government." *Loftin & Woodard, Inc. v. United States*, 577 F.2d 1206, 1236 (5th Cir. 1978). "Fraud is a question of fact. Determination of fraud must be supported by substantial evidence." *Id.* Further, "[t]he mere understatement of income, standing alone, is not enough to carry the burden cast upon the Commissioner in seeking to recover fraud penalties." *Id.* at 1239; *see also Olinger v. Comm'r*, 234 F.2d 823, 824 (5th Cir. 1956) ("Fraud implies bad faith, intentional

12

wrongdoing and a sinister motive. It is never imputed or presumed and the courts should not sustain findings of fraud upon circumstances which at the most create only suspicion."); *Mitchell v. Comm'r*, 118 F.2d 308, 310 (5th Cir. 1941) ("The fraud meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. Mere negligence does not establish either."). All of these things—clear and convincing evidence, intent, questions of fact—are the hallmarks of a jury trial. This Court pithily summarized what bears repeating here: "Fraud is not easily shown." *Loftin*, 577 F.2d at 1244. Just like in *Jarkesy*, civil penalties for tax fraud implicate the Seventh Amendment.

The similarities to *Jarkesy* do not end there. Common law fraud and civil tax fraud target the same behavior: misrepresenting or concealing material facts. *See Jarkesy*, 603 U.S. at 111 ("The close relationship between federal securities fraud and common law fraud confirms that conclusion. Both target the same basic conduct: misrepresenting or concealing material facts. By using 'fraud' and other common law terms of art when it drafted the federal securities laws, Congress incorporated common law fraud prohibitions into those laws.");

13

*Parks v. Comm'r*, 94 T.C. 654, 660-61 (1990) (explaining that to satisfy its burden of proof on fraud, the IRS "must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes"). As with securities fraud, civil tax fraud and common law fraud are not *identical*, but they both involve the key elements of intent and misrepresentation. This close relationship confirms that civil tax fraud is legal in nature— as the IRS has conceded.

Similarly, the burdens of proof for both SEC and IRS fraud penalties are elevated. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 687 (1983) (stating that the SEC civil fraud penalty "requires a plaintiff to carry a heavier burden to establish a cause of action"); 26 U.S.C. § 6663(b) (shifting the burden of proof to the IRS to prove civil fraud). And since the penalties are punitive and target the same behavior, as the IRS apparently concedes (because the penalties are legal in nature), the IRS civil fraud penalty should be treated the same way. Such a "civil money penalty scheme implicates the Seventh Amendment because it provides a quintessential legal remedy." *Vaping Dragon*, 2026 WL 266277, at *18.

Valuation misstatement penalties are similarly borne from the common law. Remedies that are punitive, rather than remedial, are those traditionally obtained in a court of law and warrant protection under the Seventh Amendment. *Jarkesy*, 603 U.S. at 123 (reiterating that "a monetary remedy is legal if it is designed to punish or deter the wrongdoer"). After all, only courts of law have traditionally "issued monetary penalties to 'punish culpable individuals.'" *Id.* (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)). In *Jarkesy*, the punitive nature of the remedy was "dispositive" that the SEC penalties implicated the Seventh Amendment.

The misstatement penalties are similarly punitive. Under 26 U.S.C. § 6662(b)(3), the IRS can seek a penalty for any portion of an underpayment of tax that is attributable to a substantial valuation misstatement. A substantial valuation misstatement is a misrepresentation of the value of property. *Id.* § 6662(e)(1)(A). However, if the value is significantly misrepresented, then the misstatement becomes a "gross valuation misstatement" and the penalty increases. *Id.* § 6662(h).

This structure looks just like the SEC penalties at issue in *Jarkesy*, which also increased with successive tiers. 603 U.S. at 124. The Supreme Court held that the system was legal in nature because the increased penalty in each tier was based on the individual's culpability, meaning "nothing in this analysis turns on 'restor[ing] the status quo.'" *Id.* (quoting *Tull*, 481 U.S. at 422).

Likewise, the increase in the IRS penalty from a substantial valuation misstatement to a gross valuation misstatement has nothing to do with making the government whole. Other provisions already account for that. The IRS can seek to impose tax that it believes was not paid by a taxpayer; that is tax the government believes is owed. On top of that, to the extent a tax is due, a deficient taxpayer owes the government interest. 26 U.S.C. § 6601(a). This interest is compensation to the government for the value of the taxpayer holding money over a period of time. *United States v. Childs,* 266 U.S. 304, 309-10 (1924) (explaining that interest is meant to be an equitable "nonpayment-compensation, not punishment").

A penalty, on the other hand, is something else. In addition to assessing tax and interest, the IRS seeks to charge Norcave with

16

penalties for fraud and misstatements.  The IRS seems to assume that all payments made to it are meant to reimburse the government for the expense of collection and litigation.  (*See* Appellee's Br. at 34).  But penalties do not do that.  While payments of tax and interest make the government whole, penalties are designed to *punish* taxpayers. Moreover, the IRS does not incur a heavier investigatory expense for penalties.  Indeed, the audit and investigation process described in the IRS's brief is the same regardless of which penalties the IRS seeks to impose.  All that changes with each penalty tier is the culpability and conduct of the taxpayer, not the harm to the government.  The IRS even concedes that the penalties it assesses should be used to "deter noncompliance" and "encourage noncompliant taxpayers to comply," "be objectively proportioned to the offense," and "be used as an opportunity to educate taxpayers and encourage their future compliance."  I.R.M. 20.1.1.2.1(8) Encouraging Voluntary Compliance (Nov. 25, 2011).  These are not remedial or equitable justifications; they are punitive measures. In fact, they are the same rationales used for criminal punishments.  *See, e.g.*, 18 U.S.C. § 3553(a)(2) (directing a sentencing court to consider the

17

need "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment," and "to afford adequate deterrence").

The fraud and misstatement penalties asserted by the IRS against Norcave are legal in nature and come within the scope of the Seventh Amendment.

## III. The IRS has not met its burden of demonstrating that the penalties fall within the public rights exception.

Even if the Court were inclined to go further, the IRS's reliance on the public rights exception is misplaced. Norcave agrees that the collection of revenue can constitute a public right. *See Jarkesy*, 603 U.S. at 128-29. But that is irrelevant here. The IRS makes no argument that fraud and misstatement penalties are for the collection of revenue. By definition, they are *penalties*, which are separate and apart from any "revenue" that the government may be due. This distinction (between taxes and penalties) matters. *See, e.g.*, *NLRB v. Starbucks Corp.*, 159 F.4th 455, 482 (6th Cir. 2025) ("[J]ust as some forms of relief (those in equity) may avoid a jury trial, others (those at law) cannot, even when they concern the same agency and the same statute.").

The IRS cannot possibly meet its burden of showing the applicability of the public rights exception because the IRS points to no

18

authority—none—indicating that fraud and misstatements "historically could have been determined exclusively by [the executive and legislative] branches." (*See* Appellee's Br. at 32 (quoting *Jarkesy*, 603 U.S. at 128)). That should end the inquiry. The presumption is that the public rights exception does not apply. It would be the IRS's burden to show otherwise. And because the IRS has no authority to show that it does apply, that argument necessarily fails.

But even though it is not Norcave's burden, history actually shows the opposite. Historically, tax penalties could *not* be determined exclusively by the executive and legislative branches. Instead, civil tax penalties were traditionally collected in common-law courts. *See, e.g.*, Roger W. Kirst, *Administrative Penalties and the Civil Jury: The Supreme Court's Assault on the Seventh Amendment*, 126 U. Penn. L. Rev. 1281, 1296 (1978) (explaining that "the early cases were handled as ordinary civil actions in the colonial courts with a trial by jury");[2] *contrast with Ortega v. Off. of the Comptroller of the Currency*, 155 F.4th 394, 406 (5th Cir. 2025) (explaining that banking regulations are a modern feature

---

[2] This article was cited by the Supreme Court in *Jarkesy*, 603 U.S. at 138 n.4.

that historically had "no involvement with Article III courts" because "there were no federally chartered banks until Congress authorized them, nor were there regulatory causes of action against such banks in the 18th century such that the Seventh Amendment could 'preserve' such suits").  For example, early statutes dictated that penalties could only be collected by a civil action in a court—and those actions included a right to a jury trial.  *See* Act of Aug. 4, 1790, ch. 35, § 67, 1 Stat. 145, 176 (dictating that "all penalties" under the act "shall be sued for and recovered with costs of suit . . . in any court proper to try the same"); Act of July 31, 1789, ch. 5, § 36, 1 Stat. 29, 47 (same); Act of June 5, 1794, ch. 45, § 10, 1 Stat. 373, 375 (dictating that "penalties and forfeitures, all of any of them, shall and may be sued for, and recovered, in any court of the United States"); *see also* An Act to Establish the Judicial Courts of the United States, ch. 20, § 9, 1 Stat. 73, 76 (1789) (dictating that "the trial of issues in fact, in the district courts, in all causes except civil causes of admiralty and maritime jurisdiction, shall be by jury"); *id.* § 12, 1 Stat. at 79 (similar).  The IRS even cites cases (both pre- and post-Civil War) in which tax issues, including those involving valuation, were tried to a

jury.  *Origet v. Hedden*, 155 U.S. 228 (1894); *Cheatham v. United States*, 92 U.S. 85 (1875); *Bartlett v. Kane*, 57 U.S. 263 (1853).

In fact, England's attempts to remove juries from the adjudicative process helped spark the Revolutionary War.[3]  *See* Kirst, *supra*, at 1296. In other words, one of the founding principles of our country was that juries should be permitted to decide whether penalties (including tax penalties) apply.  "What made the people revolt from Great Britain?  The trial by jury, that great safeguard of liberty, was taken away, and a stamp duty was laid upon them.  This alarmed them, and led them to fear that greater oppressions would take place.  We then resisted." Matthew P. Harrington, *The Economic Origins of the Seventh Amendment*, 87 Iowa L. Rev. 145, 186 (2001) (quoting 2 Jonathan Elliot, The Debates, in the Several State Conventions, on the Adoption of the Federal Constitution, as Recommended by the General Convention at Philadelphia, in 1787, at 143 (1827)); *see also Thomas v. Humboldt Cnty.*, 146 S. Ct. 27, 27-28 (2025) (Gorsuch, J., respecting the denial of certiorari) ("Surely, those

_____

[3] The "thrust" of the Seventh Amendment "was to preserve the right to jury trial as it existed in 1791," although "it has long been settled that the right extends beyond the common-law forms of action recognized at that time." *Curtis v. Loether*, 415 U.S. 189, 193 (1974).

who founded our Nation considered the right to trial by jury a fundamental part of their birthright. So much so that they cited its deprivation at the hands of colonial authorities as one of the reasons for breaking ties with England.") (internal citation omitted). A case cited by the IRS confirms as much: "If such an exercise of judicial power may nonetheless be taken from the Article III Judiciary simply by deeming it part of some amorphous 'public right,' then Article III would be transformed from the guardian of individual liberty and separation of powers we have long recognized into mere wishful thinking." *Stern v. Marshall*, 564 U.S. 462, 495 (2011).

The factual determination of whether a taxpayer engaged in fraud or made misstatements does not involve a public right. The IRS argues that it should be allowed to determine such issues because civil fraud (and presumably misstatement) penalties have occasionally been described as administrative. *(See* Appellee's Br. at 36 (citing *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)). But the IRS's reliance on *Mitchell* is misplaced. In *Mitchell,* the defendant argued that the IRS could not assess civil fraud penalties after he had been tried for criminal tax fraud *in front of a jury*. 303 U.S. at 397; *see also Mitchell v. Comm'r*, 32 B.T.A.

1093, 1127 (1935). The defendant did not ask the Court to determine whether he had a right to a jury trial, because he already had a jury trial to determine whether he "willfully attempt[ed] to evade the tax." 303 U.S. at 397. *Mitchell* certainly stands for the proposition that *some* issues can be decided in tax litigation without a jury—but it does not create the all-encompassing rule that the IRS assumes.

To the contrary, the Supreme Court in *Jarkesy* disagreed with the IRS's interpretation of *Mitchell* that civil penalties cannot be legal in nature. *See id.* at 399 ("Remedial sanctions may be of varying types. One which is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted."). In *Jarkesy*, the Supreme Court held that fraud penalties, including civil fraud penalties, that mirror common law fraud are not remedial and have been heard in Article III courts since the founding. 603 U.S. at 140. And punitive penalties that are assessed in tiers based on the culpability of the defendant are precisely those that are heard by Article III courts. *Id.* at 124. This holding cannot be squared with the IRS's theory that civil fraud penalties must be public rights.

At bottom, the IRS's theory in this case seems to be that Congress can assign *any* matter to administrative agencies and thereby escape the strictures of the Seventh Amendment. That is simply not the law—either at the time of the founding or now. After all, "as Alexander Hamilton wrote in The Federalist Papers, 'there is no liberty if the power of judging be not separated from the legislative and executive powers.'" *Id.* at 127 (quoting The Federalist No. 78, at 466). In *Jarkesy*, the Supreme Court specifically rejected the suggestion that the IRS proffers here: "that whenever Congress passes a statute entitling the Government to civil penalties, the defendant's right to a jury and a neutral Article III adjudicator disappears." *Id.* at 131 n.2.

The Supreme Court's closing pronouncement could not be clearer: "A defendant facing a fraud suit has the right to be tried by a jury of his peers before a neutral adjudicator." *Id.* at 140. That is what Norcave seeks here.

## CONCLUSION

For these addition reasons, the judgment of the district court should be reversed.

This the 12th day of March, 2026.

Respectfully submitted,

/s/ Kip D. Nelson
Kip D. Nelson
Fox Rothschild LLP
230 N. Elm Street
Suite 1200
Greensboro, NC 27401
(336) 378-5200

/s/ Meeren Amin
Meeren Amin
Fox Rothschild LLP
2020 K Street NW
Suite 500
Washington, DC 20006
(202) 794-1271

*Counsel for Appellant*

# CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2026, I electronically filed the foregoing with the Clerk of the Court of the United States Couret of Appeals for the Fifth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.

/s/ Kip D. Nelson
Kip D. Nelson

# CERTIFICATE OF COMPLIANCE

This reply brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because it contains 5,053 words, excluding the parts of the brief exempted by Rule 32(f).

This reply brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Respectfully submitted,

/s/ Kip D. Nelson
Kip D. Nelson

Dated: March 12, 2026